De Fontbrune v. Alan Wofsy I think that's exactly correct, Your Honor. And it is a Ninth Circuit case. I'm just trying to say we get that. So the question is, what does repugnant mean then? Do I have to go ick when I look at it? Do I have to shock my conscience, the conscience of the entire panel? We know it when we see it. Civilized humanity. What does repugnance mean then? The answer to that is I frankly don't know for sure, Your Honor. There are no cases I have found that discuss the question of whether, for example, repugnance should be considered from the point of view of a judge or a trial judge or an appellate panel or a lawyer or a citizen of the United States, although probably it is a U.S. It has to be a requirement of public policy in California or the United States. But I think implicit in the way the statute is written is that it has to be something that seems very extreme to a reasonable person within the state or within the United States. If, Mr. Mooney, we were to reverse the district court's finding against you on the repugnance, what then? Does it go back? And this relates to what you were saying about who decides whether it's repugnant or not. Does it go back then to the district court for further proceedings by a fact finder with respect to the shockingness or the shocking nature of repugnancy? Or is that something that we decide here? Yeah, on this particular issue, Your Honor, plaintiffs argued that summary judgment in our favor was appropriate. Defendant argued that summary judgment in their favor was appropriate. The two sides did that on all eight items in legal issues in dispute. And the district court found some were disputed and some summary judgment was appropriate on them. So our initial position is that this is clearly not repugnant. And there's no, you know, the undisputed facts and all the evidence in the record demonstrate that. I think to rephrase Judge Erickson's question, I think maybe one of the issues is, is the repugnancy issue a factual issue or is it a legal issue? Because that interfaces with the standard review because it's a summary judgment. So which is it? I don't know if I've. If I might, Your Honor, I think it's both. Well, it's based on the facts, underlying facts of the case, to be sure. But isn't it? Those underlying facts, I think, are not, as both sides suggest in their cross motions for summary judgment, subject to dispute, which is to say we know what Mr. Wolfsey did. We know that France doesn't recognize a fair use defense. So isn't it an eventual conclusion of law? I mean, it would be sort of strange to convene finders of fact and say, do you find this repugnant? Let me think about the United States law and the Constitution. Isn't this a legal conclusion in the end? Yeah. I think that's right. I think that if there were disputed facts, it would have to be remanded. They were material. It would have to be remanded. I think here, as Your Honor points out, there's not really a major dispute of the facts that I can see in any event. There may be some disputes about some service and other issues which we haven't touched on yet. But at least as to the facts that deal with the repugnancy analysis, it seems to me they're quite straightforward. Their argument is I should have been able to assert a fair use defense in France and I couldn't, and therefore the judgment is repugnant. And your argument is, no, that doesn't make it repugnant. So it seems to me it's a legal conclusion, but I could be educated about it. So you're asking us to enter summary judgment for you on that issue, which, of course, doesn't end the inquiry. And as Judge Hurwitz was just alluding to, there is the question about notice, and I want to make sure in your 4 minutes and 20 seconds that you have a chance to address the notice issue. Now, the district court found a fact issue with respect to that notice. Do you accept that? I notice that you're not asking us for summary judgment on the notice question. That's correct, Your Honor. We're merely responding to the defendants of the cross appeal asking for summary judgment on that issue. We're going to have to go back to the district court in any event if we prevail on the repugnancy and don't lose on any of the other issues here. So we're not asking for summary judgment on notice, but we are opposing their request, and the bases are twofold. The first is that although Mr. Wosey aversed that he did not have notice in advance of the beginning of the proceedings, it's undisputed that he did get notice in November of 2013. I may have to hear more. I just wonder if that isn't too late, though, given that there was a whole question about whether the plaintiff had the legal right to bring this a straight proceeding or not. I mean, these are some complicated issues that a party would want to develop in the first instance, and if you don't get notice until the ship has sailed, once you find out, hey, you can run after the ship and try and bring it back, it seems like he would have been harmed if the notice was insufficient. I think in this instance, however, Your Honor, the record demonstrates that that's not what happened because when the first notice allegedly did not arrive, the court's first substantive hearing was not a decision. It was a setting of a future substantive hearing when there were going to be disputes about service and offers of proof and everything, and notice was received more than two weeks before that hearing. So it's not as if notice was provided after judgment or after an evidentiary showing had been made. Mr. Wosey very easily could have sent his lawyers into court. He'd been litigating in France for five years. He had lawyers to say, we just got this. We need a month to prepare, or we need whatever we need to do. Now, we know from the record that he didn't do that because in the case that's largely unrelated to this one, he wrote back to the French court and said, I don't care about you. I reject your jurisdiction. So in that circumstance, we think he had more than adequate notice to appear in court and request relief, request time, request whatever he thought appropriate. You're not suggesting that we hold that in this case. You're just suggesting that there's enough of a fact dispute for the district court to have to resolve it. That is correct, Your Honor. You wanted to save some time for rebuttal, and we've taken you down to a minute. I'll add a little bit of extra time on the end, but why don't we proceed on to the arguments from the appellees. Thank you, Your Honor. I understand you're splitting time, and what we're going to do is run the clock separately for each of you so that I'm sure he wouldn't do it on purpose so that Mr. Petrovic doesn't use up all of Ms. Thornton's time. Mr. Popovic, you're up. Thank you, Your Honor, and we appreciate the opportunity to share time with Amiki. May it please the Court, my name is Neil Popovic, appearing for Ellen Wofsy and Ellen Wofsy and Associates. I want to start by reminding the Court that in order to affirm, the Court need only find one basis to accept one of Wofsy's defenses. All it takes is one basis to deny recognition, and recognition is denied. And the lower court, although it only found in favor on some adjustment on the repugnancy issue, was fully briefed on, as Mr. Mooney said, eight defenses. And it is our position that there are unspeakable facts that would warrant affirming the decision on any number of those. Based on the Court's comments, I'm going to focus my remarks on repugnancy and on the notice question. On repugnancy, the first point is that the Constitution, well, first of all, the repugnancy standard is undeniably high, but that doesn't mean it can't be met. And so I don't think it is particularly helpful to talk about how high it is, except to demonstrate what it takes to meet that standard. And the First Amendment is one of the things that it does take to meet that standard. And the Fair Use Doctrine is what Congress has done, and, Amiki, I expect will address Fair Use Doctrine more precisely than I will, but that is what Congress has done to balance the copyright interests against First Amendment interests. Let me stop you there and ask you a question. Do you agree that the statutory Fair Use Doctrine is broader than the First Amendment requires? I think it may be, but I think we don't need to answer that question in order to determine that, in this case, application of the Fair Use Doctrine and the conduct at issue is protected by the First Amendment, and the French judgment's failure to protect that conduct is repugnant to U.S. public law. Well, so that takes me to the question I was asking Mr. Mooney. And I must tell you I have some skepticism about whether, if this case had been tried in an American court, you would have prevailed on your Fair Use defense. It disappears to be a commercial use of the copyrighted photographs. I may be wrong about that, but is that analysis relevant to this case? In other words, you're saying I was deprived of a defense, and his answer is it was a terrible defense. You wouldn't have won on it. How do we evaluate that? Our response is that the record shows and Judge Davila found that it was a very good defense. It was a strong defense. In fact, it was a dispositive defense. And the inability to raise that defense because of stark differences between U.S. law and French law. The stark differences would not just be with French law. I don't know that there's any other country that recognizes a Fair Use exception to copyright exemptions. But what we are asking you about now is whether your client, Mr. Wolfsey and Wolfsey & Associates, has a winnable Fair Use defense in any event, just on the facts of this particular case. And I know the district court found that this was for libraries and educational purposes and so on. But the book sells for $300-some a copy, right? The book sells for $150 a copy compared to the $30,000 up to $100,000 auction value. But I think it is worth spending a few moments to go through the various factors, as Judge Davila did, and perhaps emphasize some of the reasons why we believe that there is a clear Fair Use defense here. First, with respect to the purpose and character of the use, I would note that some of the case law, and on appeal, defombrone refers to the transformative use. That was not raised in the lower court. Nevertheless, the undisputed evidence shows that the images in Zervos were not simply just copied with no other changes or no other additions in the Wolfsey publication. There are thousands of Picassos that were not included in the Zervos catalog. Well, but you're treating the catalog as if it's the copyrighted work. And my difficulty with that is it's the photographs that are the copyrighted work. And as to the photographs, there's no transformation at all. Do you agree? There's no evidence at all of transformation of the photographs. The photographs themselves and the purpose of the photographs have to be considered together, as this very court has observed. Okay, so start with step one. Is there any transformation of the photographs? In other words, I can picture- The photographs, I'm sorry, the photographs, the image itself is not transformative in the sense that it's a different photograph. It is the same photograph. Okay. It's not brought. So how does it then become transformative simply because you're using it to show what Picasso did at certain points in time? That doesn't transform it in any way. It does because its use is completely different. It includes significant additional information. It serves a different purpose. And that is part of the transformation, is that using the images not because of their creative expression, not to benefit from the photographer's creative expression, but rather to provide a reference point that can be then used to lead the reader to some additional information. The Ninth Circus decision in the Kelly versus the Reba Soft Corporation case, I think, is useful there because that was a case that involved exact copies of artistic photographs. But those photographs were used for a visual search engine, not in order to sell the art of the photographs, but rather to direct the user to additional information. Judge Erickson, Judge Erickson is- Those were thumbnails, and the pictures themselves were being used for a different purpose, the search engine, as you say. And here, if we acknowledge, and I don't think the district court was correct in saying that it's the totality of the body of work that was copied to produce the Wolfsey volumes, as opposed to the individual copyrights. And I think we're all in agreement now, aren't we, that what is at issue is the copyright of the individual photographs, right? But that goes for this actor, yes, but it also goes to- And then, so the photographs aren't changed by the addition of language that is further explanatory. I mean, how is that really different from what's contained in the Zervos catalog? You've got the picture. The purpose of the catalog is to demonstrate the works of Picasso. And here, we have another work, with the permission of the Picasso family, to demonstrate the progression or something else about the works of Picasso. So it's a similar purpose, and you've added words below or above or around the picture, but there's no change to the picture itself. Your Honor, we have to go back to the nature of the image. And the nature of the image here, as the French courts found, that it was protectable because of some shading or some artistic contribution that the photographers, by the way, who were not Zervos himself, but collectors who- But you're not contesting the French court's determination that these were copyrightable, are you? No, no, no. Okay. The point is to say that the basis for that determination was some imputation of creativity. The reason for the copying has nothing to do with that creativity. Indeed, the point of the copying is not for creative, to express some creative purpose, rather to, as accurately as possible, depict the works of Picasso. And the expert testimony from Professor Sells explains that that's what a catalogue raisonné does. And regardless of whether a French court might find that to be worthy of copyright protection, that's quite contrary to what our First Amendment protects in terms of- But it seems to me you're still operating from the implicit assumption that it's the catalogue's copyright that is relevant here. It's the catalogue. And it's not. It's the individual photographs. Your Honor, I would say that the same reasoning applies photo by photo because if the photos were being- If one individual photo was reproduced to benefit from the creative input from Zervos, assuming there was such creative input, that would not be a fair use issue. But if one photograph is reproduced for a completely different purpose, and that purpose is documentary- Counsel, I think I understand. Your argument is they were originally copyrightable because they had these creative elements, at least that's what the French courts determined. And we don't care about those creative elements. We just like having really good photographs. And they were really good photographs, and so that's why we took them, not because of their creative elements. And that somehow transforms it into a fair use. Is that an accurate summary of your argument? Under the first element of the fair use text, yes. That is one of the four elements. It's kind of an odd- It's kind of a- The argument's interesting because everybody would always say that, right? Somebody does a lot of work and actually gets really good- It seems to me when you're doing something, when you're saying that it includes creative elements, you're also sort of saying, You did a really good- Man, that was a really good picture of that. That's a really good reproduction. And you say, yeah, it is really good, and we want it for that reason, but not the creative aspect. I don't know, that's slicing it kind of thin. But that is precisely how the courts have sliced it, including the U.S. Supreme Court in the Google versus Oracle case, where there was no question that there was- There may have been some creativity that went into the code that was at issue in that case, but the use of it and the reason it was copied had nothing to do with that creativity. It was a functional purpose, and the U.S. Supreme Court found that that was an example of creativity. I could see in some instances, I suppose, where that distinction would make more- But you also- Do you agree that, like, in some instances, what makes somebody think that, wow, that was really impressive, your creativity really made a really good product, something that's copyrightable, would also be the reason why people would want to take it and reuse it, right? I mean, there's an overlap, at least, in those two concepts. Something being just a really good copy of it is also- seems to be probably related to whether or not you- the original making the copy of it would support why it was copyrighted. Your Honor, I would agree that that distinction is very important for the First Amendment, that distinction between an accurate representation that provides kind of a technical use versus something that captures the essence of something that might be artistic. But the challenge, counsel, is that it seems to me like the people that are buying this- they like that it has really nice pictures in it, and it's the same reason that- and it's hard to divorce that from why they were copyrightable in the first place. Your Honor, I- at the risk of disagreeing with the Court, I think that it's not because they're nice pictures, it's because they're accurate pictures, and that is an important distinction, and that's what makes- As the declaration that we had from the late Professor Sells explains, it doesn't mean that the photographs are not artistic, but when you use the Minicatalogue Resinée, as was done here, the point of them is not their artistic merit, but rather that they are accurately- they are providing a research. If I may- Let me- for a minute, because this, I think, is really one of the central issues in the case. There's eight or nine, and the briefs are quite good on them. Let's assume that I produce cartoon shorts that are a minute in length, and they're copyrightable, and somebody says, I want to sell a video about the history of cartoons, and one way to show the history of cartoons is to take all of Hurwitz's copyrighted cartoons, among others, and put them into this video, the entire cartoon, and I'll sell the video to libraries and schools and educational institutions. Has the person who's done that violated my copyright? Perhaps. We would have to apply the four factors and- A couple of- but you can't do a perhaps, I guess. You have to say no, don't you? You have to say no, this would be so clearly a fair use of Hurwitz's copyrighted cartoons, because it's been transformed into this book, or this video, or whatever, and that's what I'm having trouble- And it would be repugnant to think otherwise. And that's why I'm having trouble grasping your fair use defense here, because all you've really done is copy material that's copyrighted, put it into a book, put words underneath it, and then sold the book for money. And so I'm having difficulty figuring out why that's a fair use, wholly apart from whether France should have one or not have one. I think that is an oversimplification of what the Picasso Project does, and I think if you look at cases such as the deep finder case in the Second Circuit, where photographs of somebody else's creative content was deemed to be protected by- the use of those photographs is deemed to be protected by the fair use doctrine. I think that that is- that's exactly, again, exactly what the fair use doctrine- that balance is struck in the fair use doctrine and the application of the four factors, as Judge Stableman did. If I may, at the Court's indulgence, just a brief- No, actually, actually, Judge Erickson has a question. Could you just explain what this ostriant is? I guess to ask it in a way that you'll be able to answer more quickly, when the French Court of Appeal in the first instance ordered the payment of 2 million euros, was that a payment due at the time, or was that a statement that if you violate, you pay- and it can't be a penalty, because this Court's already said it's not a penalty. I know we've seen this case before. But was that money due and payable at that time, or was it only a statement of what will become due if there are further violations? Your Honor, we need to go back a little bit in history to understand that. The issuance of the judgment, the 2012 judgment, which imposed this claim- No, no, I'm talking about- Yeah, I'm talking about the original one where the amount was set, which was in 2001 or something. Well, 2001 set the per-penalty amount. Right. And so that was prospective. Prospective. There was a damages component to that judgment, and then there was this claim, which says if there are further violations, then there will be a financial consequence to those. And that was my question, whether there was an unpaid due that had been lingering for all these 10 years. There was a damages component that was not ever enforced. The judgment for 2 million euros in 2012 only arose and became payable at the time that judgment was issued. Okay, thank you. You've exceeded your time. One of the dangers of splitting time, I always tell counsel, is that you don't get to say everything you wanted to say because you gave five minutes away. So you have, and we'll allow Ms. Thornton to have her five minutes. Thank you. Good morning, Your Honors, and may it please the Court. My name is Katherine Thornton, and I'm representing amici, Project Gutenberg, Electronic Frontier Foundation, the Center for Democracy and Technology, and Public Knowledge. This case threatens to erode our First Amendment rights and the constitutional limitations on copyright, hindering Americans' ability to engage in speech, particularly in online speech, where an Internet pulse from the United States has an immediate worldwide presence. As the district court found, and as this court should affirm, it is repugnant to U.S. public policy to enforce foreign judgments against American residents and citizens and companies for engaging in conduct that is protected under the fair use doctrine. Okay, well, that takes me back to the question. Don't we have to determine whether or not this conduct would be protected under the fair use doctrine? Yes, Your Honor, that is certainly an inquiry that must be made. Okay, and if we concluded that it would not be, then none of the parade of horribles that you lay out for us would be implicated by this case. They might be implicated by some other case, but not this one. Your Honor, in finding that the fair use doctrine would not protect the conduct at issue here, we ask that this court explain and affirm the district court's reasoning that it is repugnant to U.S. public policy to enforce those judgments that violate fair use. Well, but that's not what the district court said. I think what the district court said was the absence of the ability to assert a fair use defense is repugnant. I'm not sure the district court found that a fair use defense on the merits would have been successful. Maybe I'm wrong in reading the district court opinion. And so don't we have to determine whether it would have been successful? And even if the district court found that it would have, it seems to me we get to review that, don't we? Of course, Your Honor. This court does get to review whether or not the use here was fair. But engaging in that analysis is necessary. It is an important part in understanding whether the foreign judgments are repugnant to U.S. public policy. So, counsel, can I ask you a follow-up question to that, which is, and it kind of relates to the standard review issue we were talking about earlier. Is it an on-off switch in the sense of that, you know, you heard that we're sort of wrestling with whether or not this is fair use or not. If it's questionable whether it would be fair use, you know, if we think, well, this is a close fair use case, does that affect, since, as we've heard, just because something's fair use doesn't necessarily mean it's a constitutional violation. And even just because it's a constitutional violation doesn't necessarily mean it's repugnant. So if we think it's a really close question on fair use, does that, the very fact that it's just a close question on fair use, does that somehow make a difference on the repugnancy analysis? No, Your Honor. Where foreign judgment does not have an equivalent fair use protection available, this court must engage, or the district court, the trial court, must engage in that fair use analysis and determine yes or no. Is the conduct here protected? And it engages in that analysis to ensure that our First Amendment rights are protected. Let me separate. Let me separate. Let me deconstruct what you're saying. Do we have to find that Mr. Wolfsey's First Amendment rights were violated, or do you merely have to find, in your view, that he would have had a successful fair use defense? They are quite, those are two quite different analyses. So tell me what your position is. This court need only find whether there was a fair use defense. The Supreme Court has repeatedly found that fair use serves as a built-in First Amendment accommodation in copyright law. So when we're examining, you know, whether speech or use of that protected material goes too far, we rely on the fair use doctrine. And, indeed, in enacting and codifying fair use, Congress noted that it furthers our constitutional goals of the progress of science and the useful arts, that the fair use doctrine furthers the purposes of teaching, research, criticism, and news reporting. And if I may, Your Honor, turning to the possible harm if this court does not uphold this, Americans post online every day. Well, but see, I understand your broader agenda, and I applaud it, but that's not what we're dealing with in this case. We're dealing with a commercial use in a book of photographs. And if we were confronted with a case where somebody posted something online and a district court found it to be repugnant, we would be facing a horse of a different color. I understand you don't want us to say anything that endangers that, but the fact that Americans post online every day doesn't have a darn bit to do with this case, which involves the commercial use of photographs in a book. And so that's why I'm trying to figure out what your position is. If your position is that France must recognize a fair use defense and it doesn't really matter about the facts of the case, it's repugnant because they don't, that's one point. If your point is that, well, we should relitigate fair use every time there's a French judgment that doesn't do it, that's another one. But I'm not worried about stuff being posted online because that's not what we're dealing with in this case. So help us with what's your legal position in this case? Tell us what your legal position is. Our legal position is that the Recognition Act provides that courts may avoid enforcement, avoid enforcement of foreign judgments when those judgments are repugnant to U.S. public policy. That public policy of the United States includes the fair use doctrine, and so the courts must engage in that analysis. And that is why we believe the district court should, the circuit court should affirm that fair use and a judgment that violates fair use would be repugnant to U.S. public policy. So, Counsel, can I just judge her? Thank you, Your Honor. She's near the end of her time, but I do want to, to Judge Hurwitz's question, is your position that just the mere fact that France does not allow for fair use makes that repugnant? Or I think earlier you were saying that we should do the fair use analysis ourselves, and so the mere fact that France does not have fair use wouldn't be enough, but if it would have made a difference in this case, that's where you think the line is. Yes, Your Honor, that's right. Where the foreign judgment did not offer an equivalent fair use protection, the courts here, before enforcing the foreign judgment, must evaluate whether the doctrine of fair use protected the speech at issue. Thank you, Your Honors. Thank you. I thank Counsel. We'll give you a couple minutes, Mr. Moody. You had 56 seconds left. We'll give you 120. Thank you, Your Honor. I appreciate it. I think the very last exchange there was extremely telling, because Counsel is arguing that the court must determine whether there would be a defense in the United States, and the defense in this case is the fair use doctrine, and that not having a fair use doctrine is contrary, Counsel said, to U.S. public policy. But the case law is very clear, both in this circuit and elsewhere, that being contrary to public policy is not repugnant of public policy, and that is a much higher standard. And the cases are very clear that merely because the plaintiff would have lost if he or she brought the case in the United States is not a reason not to recognize the foreign judgment. There has to be something that is extreme and is repugnant. Well, can I direct you back to the fair use doctrine? Of course. The district court says it finds that the defendant's use of the photographs falls within the fair use exception. Assuming we're reviewing that, what's our standard of review, since that determination was made on a summary judgment record? I assume our standard of review is de novo? On summary judgment, it is de novo, Your Honor. And here, there aren't even really facts that the court below determined. The question is whether applying the four factors of the fair use doctrine, balancing all of them, the facts that are in the record indisputably demonstrate that there was a violation of the fair use doctrine. Okay, but that leads me to a two-part question, unfortunately. One is, what if we think we can't find a fact dispute, I suppose, because the facts were stipulated, but what is our job then? What if we were to look at this and say, well, we're not so sure? Or do we then say it's not repugnant, or do we have to actually determine whether or not this was fair use? I think if there's a question in Your Honor's minds about whether other facts around the edges would change the ruling or would be significant to the ruling, then it would have to be remanded. If Your Honor's come to a firm conclusion based upon these facts, on the facts that aren't disputed, that it either is repugnant or isn't repugnant, then the panel would likely rule in favor of one side or the other. I think we've exhausted your time and probably exhausted all of you. I thank counsel for their excellent briefing and arguments in this interesting case. It will be submitted, and we will be in recess for the day.
judges: HURWITZ, VANDYKE, Ericksen